## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MICHAEL A. BRYANT** | * | |
| **10733 Hollaway Drive** | * | |
| **Upper Marlboro, MD 20772** | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| | * | **Case No.: 1:25-cv-954** |
| | * | |
| **v.** | * | |
| | * | |
| | * | **JURY TRIAL DEMANDED** |
| **LONNIE G. BUNCH III, SECRETARY,** | * | |
| **Smithsonian Institution** | * | |
| **P.O. Box 37012, MRC 012** | * | |
| **Washington, DC 20013-7012** | * | |
| | * | |
| *Defendant.* | * | |
| | * | |
| | * | |

## COMPLAINT

COMES NOW, Plaintiff, Michael Bryant ("Plaintiff" or "Mr. Bryant"), by and through his undersigned counsel Dionna Maria Lewis, Esq., complains against Defendant, Lonnie G. Bunch III, Secretary, Smithsonian Institution ("Defendant" or "Agency") and in support thereof states as follows:

## INTRODUCTION

1.       This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the Civil Rights Act of 1866, Section 1981(a) ("Section 1981"); for the Defendant's unlawful harassment, discrimination, and hostile work environment based on race (African American), color (Black), and retaliation (prior statutorily protected EEO activity) against Plaintiff.

## JURISDICTION AND VENUE

2.      This Honorable Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*., and Section 1981 of the Civil Rights Act, to redress and enjoin employment practices of the Defendant.

3.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4.      Venue for this action is predicated upon 28 U.S.C. § 1391(b) and (c). The Defendant is headquartered within the District of Columbia and is thus deemed to reside within this judicial district, and subject to the court's personal jurisdiction with respect to this civil action. Accordingly, venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b) and (c).

## EXHAUSTION OF REMEDIES

5.      Plaintiff has exhausted all of his administrative remedies.

6.      Plaintiff filed his first formal EEO Complaint on April 21, 2021 against Defendant's employees alleging harassment without resolution (Agency No. 21-06-053121).

7.      Plaintiff filed his second formal EEO Complaint on June 2, 2022 against Defendant's employees alleging harassment and retaliation without resolution (EEO Case No. 570-2022-00847X).

8.      Plaintiff then filed a third EEO Complaint in 2023 against Defendant's employees alleging continued harassment, discrimination, hostile work environment, and retaliation for prior statutorily protected activity.

9.      Plaintiff initially contacted the Agency's Office of Equal Employment and Supplier Diversity (OEED) on January 5, 2023 alleging discrimination based on based on race (African American), color (Black), hostile work environment, and retaliation (prior statutorily protected activity Agency No. 21-06-053121 and EEO Case No. 570-2022-00847X). *See* Report of Investigation (ROI) p. 21.

10.     On February 6, 2023, Plaintiff was issued a Notice of Final Interview, via email. ROI, pp. 44-45.

11.     Plaintiff filed a formal complaint of discrimination with the Agency's Office of Equal Employment and Supplier Diversity (OEED) on February 11, 2023, alleging discrimination based on based on race (African American), color (Black), and retaliation (prior statutorily protected activity - Agency No. 21-06-053121 and EEO Case No. 570-2022-00847X). The complaint was assigned Agency Case No. 23-10-021123. ROI, p. 14.

12.     The Agency provided Plaintiff with a Notice of Receipt on February 16, 2023. ROI, pp. 46-48.

13.     On March 8, 2023, the Agency issued a Notice of Acceptance Letter, accepting the Plaintiff's issues. ROI, pp. 49-51.

14.     In late July, early August 2023, the Plaintiff made an anonymous whistle blower phone call to the Office of Inspector General (OIG) to report potential overtime theft by Defendant's employees.

15.     Meanwhile, Plaintiff's OEED complaint was being investigated and the Agency issued Plaintiff the ROI and Post-Investigation Options letter on August 22, 2023, and Plaintiff received the letter the same day via hand delivery.

16.     Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 9, 2023, alleging discrimination based on race (African American), color (Black), and retaliation (prior statutorily protected activity- Agency No. 21-06-053121 and EEO Case No. 570-2022-00847X) and Plaintiff elected to have a hearing in this matter (EEOC Hearing No. 570-2024-01293X).

17.     On October 27, 2023 the Plaintiff responded to the OIG investigation by meeting with an OIG agent and making a formal complaint that was video recorded.

18.     In November 2023, Plaintiff filed a report with the SI Civil Program (SI# 21-06-053121), a resource that Smithsonian employees and affiliated persons may use to report harassment, threats of violence, incidents of intimidation, or other concerning behaviors. Plaintiff's SI Civil report was closed without any resolution or notice to Plaintiff.

19.     On January 19, 2024, the EEOC Administrative Judge assigned to Plaintiff's hearing determined the Report of Investigation was not complete and directed the Agency to conduct a Supplemental Investigation. As such, statements from four additional witnesses were obtained through a supplemental investigation, which was completed and submitted to all parties on March 1, 2024.

20.     On November 4, 2024, the Plaintiff withdrew his complaint from hearing and the EEOC Administrative Judge issued a dismissal and remand, ordering the Agency to issue a final agency decision without a hearing on November 6, 2024.

21.     On January 2, 2025, Plaintiff received from the Agency the Notice of Final Agency Action ("Notice"), notifying Plaintiff that he has 90 days from the receipt of the Notice, to file a civil action with this Court.

22. Accordingly, Plaintiff timely files this action in accordance with the Notice and his rights pursuant thereto, as well as pursuant to his rights according to 29 CFR § 1614.110.

<u>**NATURE OF THE ACTION**</u>

23. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

24. Plaintiff's damages are significant, including, but not limited to, the loss of wages and benefits, reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

25. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

<u>**PARTIES**</u>

26. Plaintiff Michael Bryant is an African American, black male who reside at 10733 Hollaway Drive, Upper Marlboro, MD 20772.

27. Defendant is a United States agency, which is headquartered in the District of Columbia.

28. During the relevant period, Defendant employed Plaintiff and Plaintiff was Defendant's employee within the meaning of and entitled to the protections of Title VII.

<u>**FACTUAL ALLEGATIONS**</u>

29. Plaintiff, Michael A. Bryant (Male, African American, Black, over 40) is a Police Officer, NZ-07, with the Smithsonian Institution's Office of Protection Services ("OPS").

5

30.     Plaintiff's duty station is at the Smithsonian's National Zoological Park Police (NZPP) in Washington D.C. where a major duty of the Plaintiff position includes: "Patrols on foot or in a motor vehicle or on a motorized cycle as designated and is assigned to one or more areas of the Park to prevent and detect, violations of the law." NZPP Police Officers are also required to perform "special duties as required" when assigned to night duty, "in addition to the usual law enforcement activities."

31.     Plaintiff has over six (6) years of employment with the OPS/NZPP Agency, serving in his position as a NZ-OPS police officer since October 1, 2018.

32.     Defendants became aware of Plaintiff's race (African American), color (black), sex (Male), and age (over 40 y.o.) upon his employment with the Agency.

33.     During his tenure with the Zoological Police Department, Plaintiff received an outstanding performance grade on every performance evaluation with the exception of receiving a highly successful performance grade in 2022. In addition, Plaintiff received the Director's Award for outstanding performance of his duties as a police officer employed with the zoo police.

34.     Plaintiff's first line-supervisor since beginning his employment is Sergeant Derek Day, and Plaintiff's second level supervisor is Acting Lieutenant Derek Lee. Now Lieutenant Luis Velazquez was previously part of the Plaintiff's chain of command as his second-level supervisor in December 2022 but has since been reassigned.

35.     On April 21, 2021, the Plaintiff filed his first EEO formal complaint against Assistant Chief Shawntane Taylor, Assistant Lieutenant Nichols, and then-Sergeant Luis Velasquez alleging  harassment and discrimination based on race (African American), color (Black), sex (male), age (YOB: 1964), and retaliation (Agency No. 21-06-053121).

36.     Then-Sergeant, now-Lieutenant Luis Velasquez was aware of Plaintiff's April 21, 2021 EEO complaint (prior EEO activity) because Plaintiff identified now Lieutenant Velasquez as a responsible management official (RMO) in the 2021 EEO complaint. Other RMOs became aware of Plaintiff's EEO activity around February 2023 when they were informed of his third EEO complaint dated February 11, 2023.

37.     Following the Plaintiff's April 2021 EEO complaint filing, the Plaintiff became aware of close associates with the RMO bad actors, named in the complaint, began to isolate the Plaintiff from his coworkers and acted with standoff treatment towards Plaintiff. For example, then-supervisor Lieutenant Christopher Carter no longer spoke freely or joked when Plaintiff was around.

38.     On March 17, 2021 the harassment continued when Plaintiff received a text message from Lieutenant Carter sharing a human trafficking mobile application that permitted access to young ladies selling sex (prostitution) online. Plaintiff never responded to the message and assumed Lt. Carter may have been a member of the site and was hoping to recruit Plaintiff into the solicitation of sex workers.

39.     On or about June 2, 2022, Plaintiff filed his second formal EEO Complaint against Lt. Velazquez alleging harassment and retaliation without resolution (EEO Case No. 570-2022-00847X).

40.     On December 26, 2022, then-second-level supervisor, Lt. Velazquez (African Caribbean descent, Black/Dark Brown, Male, Over 40, Prior EEO Activity) was on duty and in charge of staffing decisions for the annual holiday event called "ZooLights" which was held November 25 – December 11 and December 15 – December 30, from 5PM to 9PM.

41.     As the duty supervisor in charge of staffing decisions, Lt. Velazquez allowed three police officers to leave at 9PM,  although they were assigned to work overtime until 10PM for ZooLights.

42.     Plaintiff worked the night shift (7PM to 7AM) on December 26, 2022, and as a result of the short staffing by Lt. Velazquez, the Plaintiff and two other officers were forced to clear the Zoo of hundreds of visitors following the ZooLights Christmas event. Plaintiff believed he was being placed into a possibly dangerous position where he did not have the manpower to safely handle a serious situation which could have arisen during and after the event. Plaintiff believed this was retaliation for his prior EEO activities.

43.     Plaintiff and the other two officers Officer Jaime Rivera (no prior EEO activity) and Officer Jarvis Waller (prior EEO Activity) (the "Night Shift") believed Lt. Velazquez acted negligent in his staffing assignments and intentionally increased the risk of harm for the Plaintiff and the two officers as retaliation against them for their prior statutorily protected activity.

44.     On December 27, 2022 at 11:55 AM, Chief Kildea (White, Male, Over 40, No Prior EEO Activity), wrote his supervisors (including Lt. Velazquez), in part: "It troubles me to hear the midnight crew allegedly come on duty and demand certain vehicles to be made available to them, even though they are in use. If this is happening, it ends now! If a shift is reporting for duty and vehicles are being used, figure out another mode of transportation or, conduct walking patrols."

45.     Chief Kildea followed up with his leadership team via email at 1:03 PM, in part: "EVERYONE ON DUTY SUPOORT ZOO LIGHTS. I am frustrated I have to write this email as I expect more from this leadership group. If you need me to explain how you do this, let me know. Everyone will be on patrol in support of the event, vehicle(s), 4 wheelers, segways, foot patrol, whatever it may be you will all be visible and on patrol and respond to calls for sevice,

EVERYONE. Everyone will assist in closing the park, EVERYONE. There are no separate teams, we all work together. Lt. Velazquez will be Operational Commander tonight to ensure we follow these directives."

46.     On or about December 27, 2022, when Plaintiff arrived at work, Lieutenant Luis Velazquez called him and other members of the Night Shift into the office to read the email from Chief Kildea. Lt. Velazquez explained to the Plaintiff there were numerous complaints about the Night Shift from the day shift because they were not doing their jobs and, as a result, Chief Timothy Kildea would no longer allow the Night Shift to patrol in their patrol vehicles, and they were strictly required to patrol on foot. Lieutenant Luis Velazquez insisted that the instructions were coming directly from the Chief Timothy Kildea, further stating  that some of the day shift officers had been the ones to lodge the complaints against the night shift and refused Plaintiff's suggestion that they have a meeting between day shift and night shift officers to discuss any issues and improvements that could be made.

47.     Approximately 12 hours later, on December 28, 2022, Plaintiff met with Chief Timothy Kildea, Officer Jarvis Waller and Officer Jaime Rivera. During this meeting Chief Kildea denied knowing about any issues the day shift was having with the Night Shift and denied having knowledge of any problems from December 26th and 27th. Chief Timothy Kildea stated he would speak to Lieutenant Luis Velazquez.

48.     On or about December 28, 2022, Plaintiff returned to work and during roll call, Lt. Velazquez again demanded that the Night Shift would remain on foot patrol during the ZooLights events. This was contrary to previous practice and contrary to the email sent by Chief Kildea. Lieutenant Luis Velazquez only instituted foot patrol for Plaintiff's Night Shift as retaliation against Plaintiff and Jarvis Waller who both had prior EEO activity naming Lt. Velazquez. The

night shifts on Wednesday and Thursday, however, were allowed to use the patrol cars because they did not have prior EEO activity naming Lt. Velazquez.

49.    On or about December 30, 2022, Plaintiff was again placed on foot patrol. Plaintiff's immediate supervisor, Sergeant Derek Day, was advised by Lieutenant Luis Velazquez that the Night Shift was to be on foot patrol.

50.    Plaintiff believed he was made to walk as a punishment and as retaliation for him filing an EEO complaint. Plaintiff learned that the allegations Lt. Velazquez made were untrue and the claim that Plaintiff did not do his job was a slanderous comment to undermined Plaintiff's work ethic because Plaintiff was never counseled, reprimanded, or disciplined for NOT doing his job.

51.    On or about January 5, 2023, Chief Timothy Kildea met with the entire shift as a result of Lieutenant Luis Velazquez's statements regarding Plaintiff. Chief Timothy Kildea issued a public apology in front of the Night Shift.

52.    On February 1, 2023, Plaintiff was told by another officer that Lt. Velazquez informed officers that Plaintiff could not be trusted and would "throw them under the bus." Plaintiff believed Lt. Velazquez was retaliating against him with slanderous comments that were used cause his co-workers to distrust Plaintiff.

53.    Plaintiff believed he was being singled out as being a problem for his co-workers and that they were not to trust him which could lead to him not having the proper assistance when he needed it while performing his police duties, which could cause potential for great bodily injury or even death. Plaintiff believes this harassment was in direct retaliation for Plaintiff filing an EEO complaint against Lt. Velazquez.

54.    On February 2, 2023, Officer Jimmy Rivera told Plaintiff when he first arrived at the NZPP, and after his training, Lt. Velazquez pulled him and Officer Bassie Kanu into his office and told them that they should not trust Plaintiff and that Plaintiff would throw anybody under the bus. Officer Rivera also stated that he believes Lt. Velazquez does this same type of intimidation tactic with all the new officers to build loyalty.

55.    On February 11, 2023, Plaintiff filed his third EEO complaint against Defendant, also naming Lt. Velasquez (EEO No. 570-2024-01293X).  EEO Investigations were conducted by email and telephone from April 23, 2023 through August 14, 2023. On August 14, 2023, the Plaintiff received a copy of the Report on Investigation (ROI).

56.    On March 2, 2023, Officer Rivera again told the story and made it known, this time to another officer while Plaintiff was present to overhear, about how Lt. Velazquez pulled him and Officer Kanu into his office to intimidate them by telling them they should not trust Plaintiff because Plaintiff will throw anybody under the bus.

57.    In late July / early August 2023, Plaintiff made a whistleblower phone call to the Office of Inspector General (OIG) after becoming aware that overtime was not being widely advertised and only selected individuals who were privy to overtime availability would get approved for overtime when it became available. Plaintiff was never privy to the overtime availability and was never one of the fortunate officers to be selected for overtime. Plaintiff further reported to OIG suspected issues with overtime theft and specifically named Lt. Christopher Carter, Lt. Anthony Green, and Sgt. Michael Thomas as bad actors involved.

58.    Soon after making the whistleblower phone call to the OIG, Plaintiff was harassed by Lt. Anthony Green about someone making an anonymous phone call to the OIG and they were investigating  overtime issues that involve Lt. Carter and Sgt. Thomas.

59.     Days after being confronted by Lt. Green, Plaintiff became aware that Sgt. Thomas resigned and was leaving the Agency in two weeks.

60.     On July 18, 2023, prior to the whistleblower phone call to OIG, Plaintiff applied for the open entry level sergeant position that he was qualified for and referred to by the hiring agent for considerations. During this time, an announcement was made for a 120-day detail for an acting sergeant and Plaintiff applied for such temporary position.

61.     On September 24, 2023, Plaintiff was hired for the 120-day detail as an acting sergeant and on his first night he was told by Lt. Green that Lt. Carter would shadow him, explain the duties process, and show Plaintiff whatever he had questions about. However, Lt. Carter refused to train Plaintiff, and after signing onto Plaintiff rollcall, instead took an overtime assignment downtown which required Lt. Carter to leave the Zoo.

62.     On or about September 27, 2023, as acting Sergeant, Plaintiff reported to work and was handed an envelope with no directions. Acting Sergeant Charles James, who handed Plaintiff the envelope stated that Lieutenant Carter left the envelope for Plaintiff to handle. Plaintiff contacted Lieutenant Carter, who told the Plaintiff a complaint was made by a visitor NPZ Officer Dale Anderson, who was under Lt. Carter's supervision, and Plaintiff was responsible to investigate the matter and provide a recommendation for the outcome without proper training on how to conduct internal investigations.

63.     On October 9, 2023, Plaintiff then contacted Lieutenant Green to request an opportunity to observe someone doing an internal investigation to learn the proper procedures to investigate internal complaints, complete paperwork, and resolve internal complaints. However, Lieutenant Green refused to help Plaintiff. Therefore, Plaintiff was forced to conduct the investigation without any assistance or training, before submitting his recommendation to Lt.

Green and Lt. Carter. Plaintiff however, received no update on the outcome of the complaint or his recommendations.

64.    On October 17, 2023, Plaintiff was notified that he was not selected for the Sergeant position. Plaintiff believes this was in retaliation based on his race (African American), color (black), age (over 40 y.o.), and prior protected activity.

65.    On October 27, 2023, Plaintiff met with the Office of Inspector General's Agent Robert Partington to answer questions as a witness in the OIG investigation of the Defendants' overtime theft, harassment, and disparate treatment allegations.

66.    On November 15, 2023, Plaintiff was unreasonably accused by another NPZ Officer Abdulla Gilliam (non-African American, non-Black, not over 40 y.o.) who alleged Plaintiff bullied him and physically took keys to an NPZ vehicle from him. Plaintiff, however, has never had a conversation with this NPZ officer. Plaintiff was the target of such harassment and disparate treatment because of his race (African American), color (black), age (over 40 y.o.), and prior protected activity. Plaintiff's name was being recklessly used to further slander his character, to create distrust of Plaintiff amongst other NPZ officers, and as retaliation for his prior protected activities. This is an example of the hostile work environment, retaliation, and disparate treatment Plaintiff endured because Lieutenant Velasquez told NPZ officers and supervisors that Plaintiff cannot be trusted and will throw people under a bus.

67.    Soon after learning about the false accusations, Plaintiff reported the matter to the SI Civil program to investigate the Plaintiff concerns of hostile work environment, retaliation, and disparate treatment because of his race, color, and age. Plaintiff reached out to Ms. Patrice Evans to inquire about the status of his SI Civil complaint, and she stated, "management was handling the matter and management chose to close the case". Plaintiff then asked Lieutenant Carter for an

update on the status of his SI Civil complaint, and he stated, "Labor and Employee Relations (LER) had the case, and they decided not to do anything with the SI Civil complaint." To date, the SI Civil program has shown no concern for Plaintiff's complaint and Plaintiff has not receiving any findings or evidence that his SI Civil complaint was investigated before his case was closed.

68.    On December 8, 2023, Plaintiff applied again for the vacant sergeant position.

69.    On January 4, 2024, Plaintiff was scheduled for an interview to be held immediately after working a 12-hour night shift. Plaintiff requested another interview date and was denied an option to interview on another day. The interview panel consisted of Lieutenant Carter, Lieutenant Green, and Sergeant Monnier. Lt. Carter and Lt. Green both had knowledge of Plaintiff's prior statutorily protected activities (April 2021 EEO Complaint; June 2022 EEO Complaint, February 2023 EEO Complaint, October 2023 OIG Investigation, and November 2023 SI Civil Report) because of their close association with RMO's named in the complaints and their willful participation in retaliation against Plaintiff for his prior protected activities.

70.    On January 9, 2024, emailed Lt. Green to request information about the interview panel and qualifying and disqualifying factors for the selection process. However, Lt. Green refused to respond to Plaintiff requests.

71.    On January 24, 2024, Plaintiff received an email stating for the second time that he was not selected for the vacant sergeant position, but there was no reason given why Plaintiff was not selected. Plaintiff was qualified, had successful work experience as an Acting Sergeant, and had outstanding performance grades on work performance evaluations.

72.    Plaintiff was subjected to OPS management consistently targeting him and attempting to harm his professional relationships and reputation, including false accusations and efforts to reprimand Plaintiff that resulted in negative performance ratings against him.

73.    Similarly situated employees who were outside of Plaintiff's protected classes were treated more favorably or that other officers and Agency employees were not reprimanded or otherwise treated in the same manner as Plaintiff.

74.    The Agency was or should have been aware of the continued disparate treatment and the hostile work environment Plaintiff suffered and did nothing to stop it.

75.    The Agency was aware of Plaintiff's protected activity prior to the events at issue in this case.

76.    Based on reason and belief, Plaintiff was retaliated against for his prior protected activities and discriminated against because of his race, color, and age when he was unreasonably denied overtime work opportunities, when he was denied promotion to the vacant Sergeant position, when he was denied training as the Acting Sergeant, when he was falsely accused of wrongdoing, and when his name and character were negatively slandered by his acting and former supervisor.

77.    As a result of this discrimination, disparate treatment, and retaliation, Plaintiff has been gravely impacted with regards to the terms and conditions of his employment, his compensation and benefits, and emotional distress.

## COUNT I

## VIOLATION OF TITLE VII –RACE/COLOR DISCRIMINATION

78.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

79.    A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

80.     Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American, Black, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is qualified for the Sergeant position, with temporary experience as an Acting Sergeant, and has been employed by Defendant for over six (6) years. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when he was unreasonably denied overtime work opportunities, when he was denied promotion to the vacant Sergeant position, when he was denied training as the Acting Sergeant, when he was falsely accused of wrongdoing, and when his name and character were negatively slandered by his acting and former supervisor.

81.     Plaintiff is a member of a protected class as African American.

82.     Because of his race and color, Plaintiff was subjected to the unlawful conduct, disparate treatment, and adverse actions alleged throughout this Complaint in violation of Title VII.

83.     Defendant foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment when he was unreasonably denied overtime work opportunities, when he was denied promotion to the vacant Sergeant position, when he was denied training as the Acting Sergeant, when he was falsely accused of wrongdoing, and when his name and character were negatively slandered by his acting and former supervisor.

84.     Defendant knew that Plaintiff was African American and Black prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race and color.

85.     Plaintiff has been treated differently, harassed, and subjected to different terms and conditions of his employment due to his race and color.

86.     Other employees who were similarly situated, but were non-Black or Caucasian individuals, which is different from the Plaintiff, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions. Charles James (white, male, over 40 y.o., no known prior EEO activity), who had fewer years of experience and less seniority than Plaintiff, was promoted to a Sergeant position even before completing his full probationary period for government service. Tiffany Monnier (white, female, no known prior EEO activity), who had no formal police officer training, was hired as a Sergeant even though there was no announcement of a sergeant vacancy and was temporarily tasked to be Plaintiff's direct supervisor.

87.     Plaintiff's race and color was a determining factor in Defendant's unlawful conduct toward Plaintiff.

88.     Plaintiff's race and color was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

89.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

90.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of Plaintiff's race.

91.     Defendant discriminated against Plaintiff because of his race and color by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

92.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

93.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, lost wages and benefits, emotional and mental distress, pain and suffering, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

94.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of emotional distress, pain and suffering, and his injury is permanent in nature.

95.    Further, Defendant's treatment and actions are ongoing.

96.    Plaintiff has incurred lost wages and benefits, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

97.    Similarly situated non-Black, non-Hispanic, Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

98.    Defendant's actions were intentional, reckless, and malicious.

99.    Defendant must comply with Title VII, but by and through its conduct, has violated Title VII.

## **COUNT II**

### **VIOLATION OF TITLE VII –HOSTILE WORK ENVIRONMENT**

100.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

101.    When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Plaintiff must show that: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of continuous threats with hate speech and unwelcomed derogatory notes; (3) the harassment complained of was based on his statutorily protected class; (4) the harassment affected a term or condition of employment[1] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

102.    Here, the five (5) elements of a *prima facie* case of a hostile work environment are met. The Plaintiff belongs to a statutorily protected class as African American, Black, and over 40 years old.  The Plaintiff was subjected to harassment when he was unreasonably denied overtime work opportunities, when he was denied promotion to the vacant Sergeant position, when he was denied training as the Acting Sergeant, when he was falsely accused of wrongdoing, and when his name and character were negatively slandered by his acting and former supervisor. There is a basis for imputing liability, where Plaintiff's superiors, including but not limited to Lt. Velazquez, Lt. Carter, and Chief Timothy Kildea, acting on the Defendant's behalf, subjected the Plaintiff to the above-mentioned harassment and disparate treatment because of his statutorily protected class as African American, black and over 40 years old.

103.    The actions and conduct of the Defendant as set forth herein created a hostile, offensive, and intimidating work environment and detrimentally affected Plaintiff.

---

[1] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

104.    The actions and conduct by the Defendant as set forth herein were chronic, severe, hostile, and pervasive and constituted discrimination based on race and color.

105.    The actions and conduct described herein would have detrimentally affected a reasonable person of the same race, same color, and same age in Plaintiff's position.

106.    Defendant knew or should have known of the hostile work environment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the hostile work environment.

107.    By failing to protect Plaintiff within the Agency, and by allowing for other employees to receive more favorable treatment than Plaintiff in the terms and conditions of employment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

108.    Defendant's actions, and failure to act, amounted to discrimination based on race and color under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

109.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, lost wages and benefits, emotional and mental distress, pain and suffering, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

110.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of emotional distress, pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

111.    Defendant's actions were intentional, reckless, and malicious.

## COUNT III

## VIOLATION OF TITLE VII – RETALIATION

112.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

113.     Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id*. § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986).

114.     Here, Plaintiff faced retaliation for his prior statutorily protected EEO activity, including his April 2021 EEO Complaint; his June 2022 EEO Complaint, his February 2023 EEO Complaint, his October 2023 OIG Investigation, and his November 2023 SI Civil Report.

115.     Defendant subjected Plaintiff to the aforementioned adverse employment actions when he was unreasonably denied overtime work opportunities, when he was denied promotion to the vacant Sergeant position, when he was denied training as the Acting Sergeant, when he was falsely accused of wrongdoing, and when his name and character were negatively slandered by his acting and former supervisor; and because of his opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

116.     Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activities prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, informed by Plaintiff's Union President, advised by an EEO

representative, named as an RMO in the complaint, associated with an RMO that was named in the complaint, or otherwise should have known that Plaintiff engaged in the complaint process based on his informal and formal complaint filings.

117.     The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily protected activities (April 2021 EEO Complaint; June 2022 EEO Complaint, February 2023 EEO Complaint, October 2023 OIG Investigation, and November 2023 SI Civil Report).

118.     Plaintiff's prior protected activities were a determining factor in Defendant's unlawful conduct towards Plaintiff.

119.     Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

120.     Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar, or any adverse treatment.

121.     Defendant's unlawful conduct has created a climate of fear, intimidation, and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

122.     The reasons proffered by Defendant for its unlawful conduct are pretextual and meritless, and Defendant cannot further offer any legitimate reason for its unlawful conduct.

123.     Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

124.     Defendant's retaliatory conduct has been continuing, intentional, deliberate, willful, malicious, reckless and callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

125.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

126.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, lost wages and benefits, emotional and mental distress, pain and suffering, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

127.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of emotional distress, pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

128.    Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

129.    The Defendant Agency must comply with Title VII, and by and through their conduct, violated the law.

130.    Defendant's actions were intentional, reckless, and malicious.

131.    The reasons proffered by Defendants for their unlawful conduct are pretextual and meritless, and Defendants cannot offer any legitimate reason for their unlawful conduct.

## COUNT IV

## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (ADEA)

132.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

133.    A *prima facie* case of age discrimination requires a showing of four (4) elements: (1) he is at least 40 years old, or the protected age class defined by federal law; (2) he was qualified for the position; (3) he was subjected to adverse employment action, such as termination, denied promotions, denied trainings, or a pay cut; and (4) a younger person was hired or promoted to fill (or supervise) the position.

134.    Here, the four (4) elements of a *prima facie* case of age discrimination are met. The Plaintiff is over 40 years old, and he was born in 1964. Plaintiff has worked as a NPZ offer for six (6) years. The Plaintiff suffered adverse employment actions directly related to his age when he was unreasonably denied overtime work opportunities, when he was denied promotion to the vacant Sergeant position, when he was denied training as the Acting Sergeant, when he was falsely accused of wrongdoing, and when his name and character were negatively slandered by his acting and former supervisor. Plaintiff was reprimanded for action relating to non-African American non-Black coworkers. Plaintiff was denied overtime and position promotions that he was qualified and earned outstanding work performance on evaluations. Similarly situated employees, who are younger with less qualified work experienced than the Plaintiff, have been promoted to Sergeant, provided training, and provided opportunities to work overtime.

135.    Plaintiff is a member of a protected class as African American, black and over 40 years old.

136.    Because of his age, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

137.    Similarly situated employees (notwithstanding any prior known or unknown EEOC charge of discrimination activity) were not subjected to the same, similar, or any adverse treatment. Officer Pathek (Indian descent, brown, no known prior EEO activity), who was younger with less

seniority than Plaintiff, was caught stealing, on two separate occasions, when he recharged his personal electric vehicle using government owned electric vehicle (EV) charging stations. Lt. Velasquez failed to reprimand Officer Pathek for theft and did nothing to report the misconduct.

138.    Defendants' unlawful conduct has created a climate of fear, exclusion, and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

139.    Plaintiff's age was a determining factor in Defendants' unlawful conduct toward Plaintiff.

140.    Plaintiff's age was a motivating factor in Defendants' unlawful conduct toward Plaintiff.

141.    The reasons proffered by Defendants for its unlawful conduct are pretextual, meritless, and Defendant cannot further offer any legitimate reason for its unlawful conduct.

142.    Defendants' aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, negligent, and in callous disregard of the rights of Plaintiff because of his age.

143.    Defendants discriminated against Plaintiff because of his age by engaging in, tolerating, or failing to prevent age discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

144.    Defendants are directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

145.    As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

146. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

147. Further, Defendants' treatment and actions are ongoing and escalating.

148. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

149. Similarly situated non-Black or Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

150. Defendants must comply with Age Discrimination in Employment Act of 1967, but by and through their conduct, have violated ADEA.

## COUNT V

## VIOLATION OF SECTION 42 U.S.C. 1981 – RACE DISCRIMINATION

151. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

152. As an African American, Plaintiff is a member of a protected class.

153. Because of his race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Section 1981.

154. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment when he was unreasonably denied overtime work opportunities, when he was denied promotion to the vacant Sergeant position, when he was denied training as the Acting Sergeant, when he was falsely accused of wrongdoing, and when his name and character were negatively slandered by his acting and former supervisor.

155.     Defendant knew that Plaintiff is an African American prior to the adverse actions described throughout this Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race.

156.     Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American).

157.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee, because of his race (African American).

158.     Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

159.     Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

160.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

161.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American).

162.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, lost wages and benefits, emotional and mental distress, pain and suffering, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

163.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of emotional distress, pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Bryant, respectfully prays that this Court grant him the following relief:

a.    Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII, Section 1981;

b.    Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.    Award compensatory damages in the amount of $1,000,000.00 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of the Defendant alleged herein, including punitive damages;

d.    Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.    Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: March 31, 2025

28

Respectfully submitted,

_____
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 219016
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Michael Bryant*